## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY
## ASHLAND

**CIVIL ACTION NO. 0:05-CV-00242-HRW**

**DAVID BOCOOK, RODNEY BOWLING,**
**JASON DEERFIELD & JEFF CHRISTIAN,**                    **PLAINTIFFS,**


**V.**


**CITY OF ASHLAND, et al.**                              **DEFENDANTS.**

### <u>MEMORANDUM OPINION AND ORDER</u>

This matter is before the Court upon Defendants' Motion to Dismiss [Docket No. 6]. The matter has been fully briefed by the parties and now stands ripe for review. Having reviewed the memoranda as well as the record, and being otherwise sufficiently advised, the Court will sustain the motion as to all federal claims and dismiss all pendant state claims without prejudice to Plaintiffs' right to file in a court of competent jurisdiction.

## I. BACKGROUND

During the summer of 2005, a 23 year old female was arrested on multiple charges by the Ashland Police Department. While facing charges, the female made statements to police administrators that she had had sexual relations with several Ashland Police Officers while they were on duty. An internal investigation ensued,

and the officers were ordered to submit to polygraph examinations. Plaintiffs refused to take the polygraphs after being so advised by their attorney. On August 8, 2005, the Plaintiffs were formally charged with insubordination for failure to follow a direct order when each of the Plaintiffs refused to undergo a polygraph.

Hearings were scheduled before the City Commissioners for August 11, 2005. Plaintiffs Bocook, Christian, and Deerfield tendered their resignations and did not proceed with their scheduled hearings. Plaintiff Bowling went forward with his hearing, represented by counsel, but offered no proof in his own defense. The Board of Commissioners found Plaintiff Bowling guilty of insubordination and adopted the Police Chief's recommendation, terminating Bowling's employment. Plaintiffs' version of the facts indicates that the resignation of Bocook, Christian, and Deerfield was procured after Plaintiffs received a promise by the City that "no mention of any alleged misconduct would be placed in the Plaintiffs' employment file and no statements would be made publicly by the City of Ashland or its representatives," about the allegations. (Complaint, ¶ 36).

Plaintiffs' version of facts also claims that a police department spokesman stated in a large group of people at a public event that the Plaintiffs "would still have their jobs if they could just keep their dick in their pants." (Complaint, ¶ 106). Plaintiffs also claim that the City harmed Plaintiff Bocook and breached the "oral

2

agreement" when it responded to an inquiry by the local unemployment agency that he was involved in misconduct and insubordination. Further, Plaintiffs contend that these events all came about as retaliation by Defendant Kelley for Plaintiffs' associations with the local Fraternal Order of Police.

The Complaint raises 17 different counts. However, only the first 3 counts are federal, brought under 42 U.S.C. §1983. Because the Court finds that Plaintiffs fail to state a claim for relief on any of the three federal claims, the 14 pendant state claims need not be discussed in great detail[1].

The federal claims, the only claims relevant to the analysis below, include the following:

**Count I, Due Process:**

Plaintiffs allege violation of their due process rights under the US Constitution, actionable under 42 U.S.C. §1983 as well as under Kentucky law. Specifically, Plaintiffs maintain that the "exercises used to coerce the resignations and the termination of Plaintiffs' employment by Defendants

---

[1] Those state claims include: Count IV, False Imprisonment; Count V, Abuse of Process; Count VI, Constructive Discharge; Count VII, Intentional Infliction of Emotional Distress; Count VIII, Negligent Supervision; Count IX, Negligent Retention; Count X, Malfeasance; Count XI, Vicarious Liability; Count XII, Extortion; Count XIII, Breach of Oral Contract; Count XIV, Retaliatory Discharge;Count XV, Slander Per Se; Count XVI, Violation of KRS 15.520; Count XVII, Violation of KRS 95.450**.**

was an arbitrary and malicious abuse of power," thereby violating Plaintiffs'

rights to Due Process of Law. Plaintiffs seek injunctive relief and

compensation on this count.

**Count II, "Liberty Interest" under §1983:**

Plaintiffs allege in this count that the actions of the Defendants have

"damaged and impugned" their good names and reputations. Specifically,

Plaintiffs complain that the Defendants issued press releases regarding the

Plaintiffs' employment status and that Plaintiffs were not offered any

opportunity to "clear their good names." For this count Plaintiffs seek

injunctive relief and compensation.

**Count III, First Amendment Violations Under §1983:**

Plaintiffs complain that the "conduct of Defendant Kelley was meant

to discourage Plaintiffs association and leadership roles within the local FOP

union which disagreed with Defendant Kelley's administration policies."

Plaintiffs allege harm to their rights of free speech and free association and

for this count seek injunctive relief and compensation.

## II. DISCUSSION

Defendants argue that Plaintiffs' first three counts must be dismissed

because they are all collateral attacks on their terminations or resignations that

4

were required to be raised in the statutory or contractual procedures available to the

Plaintiffs. Defendants argue that per the statutory scheme and procedures available

under K.R.S. 95.460 and K.R.S. 15.520, as well as under the collective bargaining

agreement, Kentucky law provides complete relief for the Plaintiffs. The Court

agrees that such relief should have been sought prior to bringing this action.

## A. The 1983 Due Process Claim

### 1. Federal Due Process Requirements

The analysis begins with the proposition, articulated in *Cleveland Bd. of

Educ. v. Loudermill,* 470 U.S. 532, 546 (1985) that all that is required by due

process in the case of a tenured public employee is oral or written notice of the

charges against him, an explanation of the employer's evidence, and an

opportunity to present his side of the story. In other words, due process merely

requires notice and an opportunity to respond. In the words of the *Loudermill*

court, "[t]o require more than this prior to termination would intrude to an

unwarranted extent on the government's interest in quickly removing an

unsatisfactory employee." *Id.*

Other relevant due process cases include: *Gillard v. Norris,* 857 F.2d 1095,

1099-1100 (6th Cir. 1988)(holding that an opportunity to present only written

evidence to a non-neutral factfinder was sufficient to satisfy due process); *Leary v.*

5

*Daeschner,* 228 F.3d 729, 744 (6th Cir. 2000)(holding that where plaintiffs were offered, but refused to participate in, a hearing scheduled for only several hours after discipline was imposed, due process was satisfied); *Garraghty v. Jordan,* 830 F.2d 1295, 1302 (4th Cir. 1987)(holding that an informal conference with a superior was sufficient process and noting that "realities of the work place, especially in the paramilitary environment of corrections departments , require that authority be respected and that discipline be swift.").

In addition, the required pre-deprivation process is further lessened when an employee is "otherwise provided an opportunity to respond at a meaningful time and in a meaningful manner."*Brock v. Roadway Express,* 481 U.S. 252, 266, 95 L.Ed. 2d 239, 107 S.Ct. 1740 (1987). And see *Buckner v. City of Highland Park,* 901 F.2d 491, 497 (6th Cir. 1990)(noting that requirements of elaborate termination proceedings would hamper a city's interest in quickly removing an unsatisfactory employee). As a result, a plaintiff alleging a due process violation in such a situation must show that he was not provided the most basic notice of the charges, description of the evidence against him, and some opportunity to tell his side of the story. The Plaintiffs in this case cannot and did not so allege.

**2. The State Statutory Processes**

K.R.S. 15.520 governs complaints against police officers, as well as the

manner of their investigation and hearing. First, the statute provides that

complaints taken from individuals alleging misconduct of police officers shall be

either signed and sworn or independently substantiated. K.R.S. 15.520(1)(a). It

provides for 48 hour notice to the officer before he may be interrogated on the

matter. K.R.S. 15.520(1)(c). It also provides for a hearing. Specifically, the officer

is entitled to 72 hours notice of the hearing, the right to have counsel present and

be represented by counsel, the right to present witnesses and documentary evidence

and cross examine witnesses. K.R.S. 15.520(1)(h). In addition to these and other

procedural guarantees, the statute provides that

> **The failure to provide any of the rights or to follow the provisions of this section may be raised by the officer with the hearing authority**. The hearing authority shall not exclude proffered evidence based on failure to follow the requirements of this section but shall consider whether, because of the failure, the proffered evidence lacks weight or credibility and whether the officer has been materially prejudiced.

K.R.S. 15.520(1)(h)(9)(emphasis added).

Beyond those rights to notice and hearing,

> "Any police officer who shall be found guilty by any hearing authority of any charge, may bring an action in the Circuit Court in the county in which the local unit of government may be located to contest the action of the hearing authority, and the action shall be tried as an original action by the court."

K.R.S. 15.520(2).

And as with any civil action in the circuit courts, K.R.S. 15.520(3) provides

7

a right to appeal the circuit court's decision to the Kentucky Court of Appeals.

Additionally, K.R.S. 95.450 sets forth procedures for disciplining members of police departments. Like K.R.S. 15.520, this statute provides for a hearing wherein the officer may call witnesses and present evidence. Also like K.R.S. 15.520, this statutory scheme also provides for appeal to the circuit court. K.R.S. 95.460 provides "[a]ny member of the police or fire department in cities of the second and third classes or urban-county governments found guilty... may appeal to the Circuit Court of the county in which the city or urban county government is located." K.R.S. 95.460(1). As in the scheme set forth above, that case is then tried as an original action.  And of course, "appeal will lie from the judgment of the Circuit Court to the Court of Appeals as in other cases." K.R.S. 95.460(4)

### 3. Process Afforded to the Plaintiffs

The record is clear that Plaintiffs received notice of the charges against them (Docket No. 6, Attachment No. 4). Plaintiffs also had the opportunity for a pre-termination hearing pursuant to K.R.S. 15.520. Indeed, that hearing was already on the schedule and Plaintiffs had already received notice of it at the time they resigned (Docket No. 6, Attachments No. 5, 6) That hearing was to be held before the Ashland City Board of Commissioners, and the Plaintiffs had the right to counsel and the opportunity to present evidence and call witnesses (Docket No.

6, Attachment No. 5). If the Plaintiffs were unhappy with the results of the hearing, then they would have had a right to proceed to Circuit Court to contest the action of the Board of Commissioners. The Circuit Court action would have been tried as an original action, and the judgment of that court would have been appealable to the Kentucky Court of Appeals. Likewise Plaintiffs had this opportunity under K.R.S.  95.460.  However, Plaintiffs Bocook, Christian and Deerfield chose not to avail themselves of those procedures. While Plaintiff Bowling did go forward with his hearing, he chose not to take advantage of the opportunity to present evidence in his favor (Docket No. 6, Attachment No. 7).

Also, Ashland City Ordinance No. 100.2005 adopts the agreement between the City of Ashland, Kentucky and the Fraternal Order of Police. In Article 23 of that agreement, a detailed grievance procedure is afforded to "an officer who feels aggrieved by an act or decision by the city administration, supervisory personnel, or other city employee." The grievance procedure proceeds up the chain of command until it reaches the Board of Commissioners Grievance Committee, and ultimately, to mediation or arbitration with judicial review. Plaintiffs did not avail themselves of this procedure either.

Under the two statutory schemes as well as the grievance process, a series of elaborate procedures were available for Plaintiffs prior to the terminations and

9

resignations. Plaintiffs cannot now claim violations of their due process rights were when they failed to avail themselves of the opportunities provided. It is undisputed that Plaintiffs Bocook, Deerfield and Christian, all resigned their employment and waived their pre-termination hearings which had already been scheduled. None of these Plaintiffs filed a grievance under the collective bargaining agreement.

Plaintiff Bowling had a full pre-termination hearing. At the hearing he was represented by counsel but offered no proof. When the Board of Commissioners upheld his termination, he did not pursue his right to challenge that decision in Circuit Court under the statutes. He likewise did not file a grievance.

Plaintiffs have attempted to obscure the distinction between constitutional due process rights and the rights provided for by the applicable state statutory scheme. This distinction cannot be overstated. One set of rights emanates from the U.S. Constitution and commands only the most basic of procedures. *See Loudermill, supra.* The other set of rights is a creature purely of the state legislature; those rights are guaranteed by state, not federal law. A violation of the requirements of the state statute simply does not give rise to a federal constitutional due process claim.

Without any doubt, the procedures in K.R.S. 15.520 and K.R.S. 95.450 go above and beyond the minimum required by due process. Under *Loudermill,*

10

Plaintiffs were entitled to "some form of pre-termination hearing" and "some opportunity... to present his side of the case." 470 U.S. at 543. As a matter of Constitutional law, Plaintiffs were provided notice and an opportunity for pre-termination hearing where they would have had an opportunity to be heard and appeal the eventual decision. Plaintiffs did not take advantage of those opportunities.  Any questions concerning Defendants' compliance with specific state statutory requirements (e.g., lack of a sworn statement) should have been raised in those very hearings. Thus, Plaintiffs' constitutional due process claims cannot be sustained on the argument that Defendants did not follow each and every requirement of K.R.S. 15.520.

Finally, the Court notes Plaintiffs' argument that since the allegations of the female suspect which triggered the investigation were not set forth in a **sworn** complaint, as required by KRS 15.520, then the entire process was fatally flawed. Plaintiffs claim that "the bottom line" is that they can't be held responsible for their failure to exhaust because the investigation was void ab initio. Plaintiffs do not cite any law to support this contention. In fact, the face of the statute itself seems to refute such a reading by expressly providing that failure to follow any of the procedures may be raised at the statutory hearing. It is also worth noting, once again, that Plaintiffs were not terminated for the alleged sex acts, but for failure to

11

follow an order.

To use Plaintiffs' own phrase, the "bottom line," is that the Plaintiffs in this case were afforded far more process than what is required under federal constitutional law. That Plaintiffs did not think it worth participating in this process does not give rise to federal claims under 42 U.S.C. §1983.

**B. The 1983 Liberty Interest Claim**

Plaintiffs' claim under Count II is governed by the Sixth Circuit's holding in *Ludwig v. Board of Trustees of Ferris State University,* 123 F.3d 404 (6th Cir. 1997). *Ludwig* addresses the procedures required when, in conjunction with a termination of employment by the government, the Plaintiff claims a deprivation of a liberty interest in his good name and reputation. Defendants argue that even assuming Plaintiffs had a liberty interest that required a hearing to clear their names, this claim fails because Plaintiffs failed to request such a hearing, nor did they take advantage of the hearing process under the collective bargaining agreement, K.R.S. 95.460 or K.R.S. 15.520. The Court agrees.

The *Ludwig* Court held that if the five elements for deprivation of a liberty interest are met, then the employee is entitled to "notice and an opportunity to be heard through a name clearing hearing... when plaintiff has made a request for such a hearing...(and) such a hearing need only provide an opportunity to clear one's

12

name and need not comply with formal procedures to be valid.**"** *Id*. at 410. The Sixth Circuit did not even reach the question of whether there had been a deprivation of a liberty interest because it found the *Ludwig* Plaintiff did not sufficiently apprise the University of his desire for a name clearing hearing after the dissemination of the statements.

In the instant case, the Plaintiffs do not allege that they ever requested such a procedure, or any opportunity whatsoever to clear their names, as required by *Ludwig*. Moreover, Plaintiffs Bocook, Deerfield, and Christian all waived their scheduled hearings pursuant to K.R.S. 15.520 and K.R.S. 95.450, and Plaintiff Bowling actually did have his statutory hearing but failed to put on evidence to "clear his good name". Plaintiffs' Response to the Motion to Dismiss fails to address these issues, which is telling.

Again, Plaintiffs were not deprived of anything in terms of federal constitutional law. Under the applicable law, Plaintiffs' allegations are legally insufficient to maintain the claim under Count II of the Complaint.

## C. The 1983 First Amendment Claim

Defendants argue that this claim, like the majority of Plaintiffs' claims, must be dismissed under the theories of failure to exhaust and claim preclusion. Again, the Court finds Defendants' argument is well made.

13

Claim preclusion applies where the following four elements exist: (1) the prior decision was a final decision on the merits; (2) the present action is between the same parties or their privies as those to the prior action; (3) the claim in the present action should have been litigated in the prior action; (4) an identity exists between the prior and present actions. *Mitchell v. Chapman,* 343 F.3d 811, 819 (6th Cir. 2003). The meaning of "final decision on the merits" was fleshed out in *Mitchell* to the effect that a failure to exhaust administrative remedies can be considered a decision on the merits. The test is whether the individual is permanently foreclosed from ever raising that issue in that prior action.  A "decision on the merits is one that permanently forecloses a party from advancing a claim or defense." *Id.* at 821. Thus, Plaintiffs' failure to go forward with the administrative and statutory procedures available to them can be considered a final decision on the merits to satisfy the first requirement of claim preclusion. In addition, the parties are the same, as required by the second prong.

With regard to the third prong of claim preclusion, that the matter should have been raised in the prior proceeding, K.R.S. 15.520 leaves no doubt. K.R.S. 15.520(1)(h)(9) provides that "[t]he failure to provide any of the rights or follow the provisions of this section may be raised by the officer with the hearing authority." Thus, all of Plaintiffs' claims pertaining to the failure of Ashland and

14

its officials to follow the procedures and requirements of the K.R.S. 15.520 should have been raised in the K.R.S. 15.520/K.R.S. 95.450 proceedings, and absent that, are now barred.

On the specific matter of Plaintiffs' 1983 First Amendment claims, Plaintiffs contend that the real reason for their termination was because of their support for the Fraternal Order of Police. Plaintiffs thus seek to attack the validity of the charges brought against them for insubordination. That is, Plaintiffs are attempting to prove that the reasons given for the charges against them (insubordination) were merely a pretext to violate their First Amendment rights.  However, the reasons for Plaintiffs' termination have been preclusively determined through the K.R.S. 15.520/K.R.S. 95.450 procedures. Plaintiffs waived their opportunities to present evidence on this issue by not raising it in the statutory hearing or through the grievance procedures under the collective bargaining agreement. Plaintiffs are thus precluded from raising this claim now in a subsequent proceeding.

### III. CONCLUSION

For the reasons set forth above, the Court concludes that Plaintiffs fail to state a claim for which relief may be granted under any of the three federal counts in the Complaint. Those claims will therefore be dismissed. Additionally, in suits brought under federal question jurisdiction, when the federal claims are dismissed

and all that remain are pendent state claims, "remand to state court [is] a matter of discretion." *Harper v. Autoalliance Int'l., Inc.,* 392 F.3d 195, 211 (6th Cir. 2004). This Court has never retained jurisdiction of state claims after federal claims fall away, and this case presents no persuasive grounds to do so now.

Accordingly, **IT IS HEREBY ORDERED:**

1) that Defendants' Motion to Dismiss [Docket No. 6], is **SUSTAINED IN PART**, and Counts 1, 2, and 3 of the Complaint [Docket No.1] are **DISMISSED WITH PREJUDICE**;

2) that Plaintiffs' remaining state claims are **DISMISSED WITHOUT PREJUDICE** to Plaintiffs' rights to file and litigate all remaining claims in Boyd Circuit Court; and

3) that this matter be stricken from the Court's active docket.

This August 8, 2006.



Signed By:

Henry R Wilhoit Jr.

United States District Judge

16